COX & FAHNER (STEEL UNION SHEET PILING, INC.) ET AL. *v.*
UNITED STATES

**No. 5665.**—Invoices dated, Dusseldorf, Germany, June 16, 1937, etc.
Certified June 17, 1937, etc.
Entered at New York, N. Y., June 30, 1937, etc.
Entry No. 896373, etc.

(Order dated June 22, 1942)

*Eugene R. Pickrell* for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*Dorothy C. Bennett* and *Richard F. Weeks*, special attorneys), for the defendant.

ORDER

DALLINGER, Judge: These appeals to reappraisement involve the question of the dutiable value of certain steel bars exported from Germany during the years 1937, 1938, and 1939. The instant appeals were tried as test cases, one for each of the 3 years involved. Counsel for the plaintiffs abandoned the appeals as to all steel bands appearing on the invoices, and limited all clamis to steel rounds, flats, and squares, all of which are known in the trade as steel bars.

All of the merchandise herein was appraised on the basis of foreign value at 115 reichsmarks per 1,000 kilos, less 3 per centum cash discount. The plaintiffs claim that no foreign value exists for said merchandise for the reason that the steel bars sold in Germany for home consumption are not similar to those exported to the United States, and that the home market is a restricted market as to resales. They, however, claim that the proper basis for determining the dutiable value of the merchandise is export value, and that said export value of the merchandise is the entered value thereof; and that, alternatively, if the court finds there is no export value, then the proper basis for determining the dutiable value of said merchandise is the United States value thereof, of which they also offer proof.

On the other hand, the Government contends that there exists neither an export value nor a United States value for said merchandise, and that the plaintiffs, not having proved a dutiable value for said merchandise other than that found by the appraiser, the appeals should be dismissed.

The evidence in these cases is very voluminous, consisting of 317 typewritten pages of oral testimony and 53 exhibits including affidavits, records of sales, special agents' reports, and other documents.

It appears from plaintiffs' exhibits 36, 37, and 38 that at the time of the exportation of the involved merchandise there existed in Germany a cartel known as Stahlwerksverbund, to which all the manufacturers of steel bars in Germany belonged; that each member of said cartel was limited to a certain specified district in Germany, was required to resell steel bars for use in his district at prices fixed by the Association of German Steel Wholesalers, and was prohibited from exporting the same to foreign countries; that members violating these restrictions were penalized in the amount of 30 per centum of the purchase price; that sales to consumers were made with the restriction that the purchasers must consume or convert the steel bars in their own plants and were prohibited from selling the same; that said restrictions were applicable to all offers of sale as well as to sales of steel bars by all members of the concern for home consumption in Germany; that all invoices to consumers for home consumption in Germany contained the said restrictions; that in short, the sale of steel bars for home consumption in Germany was completely controlled as to price and use from manufacturer to consumer; and also that sales to countries other than the United States were all made with the prohibition against exporting to any third country.

This evidence is corroborated by defendant's exhibits 41 and 42.

It also appears from plaintiffs' exhibits 6, 7, 35, 36, and 38 that all the steel bars exported to the United States from January 1, 1935, to November 25, 1939, were in inch dimensions, and in composition conformed to the standards established by the American Society of Testing

Materials; that it was impossible to sell steel bars, steel rounds, and steel flats in inch. dimensions for home consumption in Germany for the reason that all tools, apparatus, and industrial equipment in Germany are constructed in accordance with the metric system; that all strength calculations, tables, etc., in Germany are also based upon the metric system; that for the same reasons it would be just as impossible to find a market in the United States for steel bars, steel rounds, and steel flats in metric sizes; that steel bars sold for home consumption in Germany are not commercially interchangeable with those sold for export to the United States; that the difference between the commercial value of steel bars sold for home consumption in Germany and the commercial value of those sold for export to the United States is approximately 35 per centum; that in short, the steel bars bars sold for home consumption in Germany and those sold for export to the United States are in no way interchangeable because they are made from different standards and specifications and because the quality is different and the whole schedule of manufacture is different.

From these facts it is evident that not only is the market for home consumption of steel bars in Germany a restricted market as to resale, but also that no steel bars such as or similar to those here in question were freely offered for sale for home consumption in Germany during the years 1937, 1938, and 1939. Hence, it follows that at the time of the exportation of the merchandise at bar there was no foreign value for said merchandise, and the appraiser erred in finding such values. Therefore, there exists no presumption in favor of the correctness of the appraiser's action.

The next question to be considered is whether there existed an export value for said merchandise, as claimed by the plaintiffs. In this connection counsel for the Government contends that no export value existed for the reason that due to the German syndicate's control of prices, steel bars were not freely offered to all purchasers for exportation to the United States. It is true that there was an "International Raw Steel Cartel," but according to the report of the Treasury representative, Karl M. Richards (defendant's exhibit 40), the said cartel included Belgium, France, Germany, Luxemburg, England, Poland, and Czechoslovakia. In other words, this so-called international syndicate was only an international European syndicate. To be sure, the plaintiffs' witness Barreau did testify on cross-examination that it was his "impression" that there existed a United States syndicate for export business. But a witness' impression cannot be accepted as evidence of the fact.

In its 1935 sales agreement (exhibit 1) the "Stahlunion-Export G. m. b. H.," the foreign seller and exporter herein, inserted in section III a proviso requiring its permission for export from the United States to other countries. The 1936 agreement between the exporter

and importer (exhibit 20) does not contain such a proviso. Moreover, it appears that such a restriction was not in force on the dates of exportation herein, because paragraph 6 of article 35 explicitly states that there was no restriction of sales of such steel bars exported to the United States.

Counsel for the Government also raises the point that during the years 1937, 1938, and 1939, the export periods involved herein, the foreign exporter herein sold German steel bars for exportation to the United States to three territorial distributors only, to wit, Steel Union Sheet Piling, Inc., the importer herein, Steel Union, Inc., of Los Angeles, Calif., and Cron & Dehn of Seattle, Wash., and that therefore there existed no freely offered price to all purchasers for export to the United States, citing the case of *United States* v. *Malhame & Co.*, 24 C. C. P. A. 448, T. D. 48911.

It is to be noted, however, that the sales agreement with each of those concerns covers a variety of steel products, each agreement expressly reserving the right of direct sale by the foreign exporter, sales of a number of said products being made to other purchasers.

Furthermore, paragraph 6 of exhibit 35 expressly declares that such or similar steel bars to those involved herein were freely offered for all purposes for export to the United States without any restrictions as to resale. For this reason I am of the opinion that the case of *United States* v. *Malhame & Co.*, supra, has no application to the facts established herein.

For the above reasons I am satisfied that at the time of the exportation of the instant merchandise there was no restriction on the sale of such or similar merchandise for export to the United States.

It being established that there existed no foreign value for said merchandise, and also that there was no restriction on the sale thereof for export to the United States, the question arises as to whether on the evidence submitted I can find an export value therefor, as claimed by the plaintiffs.

While it is stated in the affidavit of Adolph Schmidt (plaintiffs' collective exhibit 35) that such or similar merchandise was freely offered for sale to all purchasers for export to the United States at certain specified base prices, plus certain extra amounts varying according to the thickness of the steel bars in question, nevertheless the prices set forth in the invoices attached to the said affidavit do not agree with such statements made in the affidavit. As a matter of fact, there appears to have been no uniformity in the prices paid for said merchandise. In one instance, the same importer paid three different prices for the same merchandise on the same day. This may be accounted for by the fact that the merchandise herein was all manufactured to order, a considerable interval of time elapsing between the offer, the giving of the order, and the actual exportation of

the merchandise in question. Hence, the exporting manufacturer in making his offer for future deliveries was obliged to estimate both the inland and ocean freight in order to arrive at the actual C. & F. New York price. Under these circumstances it may readily be seen that the actual freight paid at the time of exportation would naturally differ considerably from the exporter's estimate.

While, as one member of this court, I would be inclined to give great weight to the statements in the affidavit of Adolph Schmidt (plaintiffs' collective exhibit 35) as to the existence of an export value for the merchandise herein, nevertheless the United States Court of Customs and Patent Appeals has decided otherwise.

In the case of *Jenkins Brothers* v. *United States*, 25 C. C. P. A. 90, T. D. 49093, the appellate court said:

* * *. While a statement that a given quantity is or is not a usual wholesale quantity might in some circumstances be regarded as some substantial evidence of the fact, such a statement can have no weight as a statement of fact when all of the facts upon which the statement is made are disclosed. It then becomes merely a conclusion of the witness, which can have no weight with the court in determining what is a usual wholesale quantity.

In the instant case the invoices attached to said collective exhibit 35 do not agree with the statements in the affidavit, and therefore I am unable to find upon the evidence herein that there was a definite price at which such or similar merchandise was freely offered for sale at the time of the exportation of the merchandise herein to all purchasers in the usual wholesale quantity in the principal markets of the country of exportation in the ordinary course of trade for exportation to the United States.

Therefore, it being impossible to find an export value of said merchandise in accordance with the statutory definition thereof as construed by the United States Court of Customs and Patent Appeals, the question remains whether the plaintiffs have proved that there existed a United States value for said merchandise at the time of the exportation thereof.

As has already been stated, it appears from the record that all offers to sell German steel bars during the period covered by the instant appeals related to merchandise not in existence, but to steel bars to be manufactured subsequent to the placing of the order. On cross-examination the president of the importing corporation testified as follows:

X Q. Now, Mr. Barreau, you testified your selling agents made these sales or offers which you in New York had to confirm and which had to be confirmed by Stahlunion-Export in Germany. Then, where was the merchandise when you sent your salesmen out? Was it here in New York, or was it in Germany?—A. It didn't exist at all.

X Q. It didn't exist at all?—A. The merchandise is sold and made to order. After the order is taken it is customary in the steel business to start rolling.

X Q. Then it was imported subsequent to the time you made the sale in this country?—A. That is correct.

X Q. In all instances?—A. In all instances.

Exhibits 2, 3, 4, and 5, consisting of the importer's office records of importations and sales of such steel bars during the 3 years covered by the within appeals, and also exhibits 10, 11, 12, 22, 23, and 24, consisting of two sets of tabulations setting forth the dates of sale and importations of German steel bars by Steel Union Sheet Piling, Inc., and Steel Union, Inc., corroborated the above testimony of the witness Barreau.

While it is true that the Secretary of Steel Union, Inc., testified that his firm sometimes had imported stock on hand available for offer, the same witness later in his testimony admitted that this occurred only in instances where orders have been canceled. Manifestly such instances were not in the ordinary course of trade. Moreover, the said witness did not testify when this occurred, nor the price at which he offered said merchandise.

On this state of facts it is evident that no statutory United States value existed for this merchandise at the time of the exportation thereof, as section 402 (e) defines the United States value as the freely offered price of "such or similar imported merchandise" in the principal markets of the United States, etc. *United States* v. *G. W. Sheldon & Co.*, 23 C. C. P. A. 245, T. D. 48108; *Stern Hat Co.* v. *United States*, 26 C. C. P. A. 410, C. A. D. 48; *United States* v. *Collin & Gissel*, 29 C. C. P. A. 96, C. A. D. 176.

In the case of *Collin & Gissel, supra*, the facts were very similar to those set forth in this record. In that case the appellate court said:

* * *. No imported machine was in the United States available to be offered for sale by the importer at $5,500, or at any other price, on July 11, 1934, the date of exportation of the involved machine, nor at any time near that date. The statute defining United States value explicitly states, "The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale * * * in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise * * *," and it was definitely construed by us in the *Sheldon & Co.* case, *supra*, in the manner already stated. Clearly, had the importation here involved been a first importation of the particular type of merchandise at issue no United States value could be determined under the statutory definition which Congress adopted and, there being no prototype machine in the United States at or near the date of exportation of the involved machine available for offer, a fundamental element of United States value, as defined by the statute, was lacking. Upon the facts shown, in our opinion, no legal distinction can be drawn between the importation involved and a case of first importation.

Although, in my opinion, the plaintiffs have proved that the appraiser erred in finding a foreign value for the merchandise herein, nevertheless they failed to prove either an export value or a United States value for said merchandise. Under all the circumstances,

however, I feel constrained to deny the Government's motion to dismiss the within appeals, and grant the Government an exception to this ruling, and in the exercise of my discretion I direct that the within appeals be restored to the docket for the purpose of giving the plaintiffs herein an opportunity to prove the cost of production of said merchandise.